June Term,
1862.

DOWNER VS. MILLER and others.

DOWNER
v.
MILLER et al.

15  612
75  193

15      612
54 LRA  289

A loan of money or credit, for the purpose of enabling the borrower to pay a debt for which the lender is in no way bound, as surety or otherwise, does not entitle the lender to be subrogated to the rights of the creditor whose debt was thus paid.

L obtained a judgment for foreclosure and sale of property owned by S, upon which D had a junior mortgage executed by S. S agreed with M, that if M would indorse a note to raise money to pay L's judgment, such judgment should be kept open and assigned to M, for his security as such indorser; and the money was raised on such indorsement and paid to L, who gave a receipt in full for said judgment. D was ignorant of the existence of the above agreement, and delayed prosecuting his claim against S, and took no steps to redeem from said judgment, owing to the representations of S that such judgment was satisfied. Held, That a court of equity will keep such judgment alive and in force for M's security as indorser, according to the agreement between him and S; and it also appearing that M had paid such note, he was allowed to enforce such judgment of foreclosure, to collect the amount he had paid, with interest and costs of collection.

It was no objection to the enforcement of the agreement between M and S, that the creditor L was no party to it, as such agreement would be executed when justice between others required it, without reference to the question whether L assented to it.

To use the money thus obtained on M's indorsement to pay such judgment and have it discharged, would operate as a fraud upon M, and he would be entitled to have such discharge set aside.

The rights of D were subsequent and subject to L's judgment, and as they were not acquired upon the faith of its discharge, he is therefore in no position to insist that he is injured by the judgment being kept in force for M's security.

When a prior mortgage or judgment, by wrong or fraud has been discharged of record, a subsequent mortgagee whose rights existed at the time of such discharge, cannot claim to be injured by the discharge being set aside, and the prior mortgagee or judgment creditor restored to his rights.

Mere delay on the part of D to enforce his mortgage, on the faith of the satisfaction of L's prior judgment, is not such a change of position as to entitle him to object to the execution of the agreement between M and S.

APPEAL from the Circuit Court for *Milwaukee* County. This was an action brought by *Downer* against *Andrew G. Miller, The Wisconsin Marine and Fire Insurance Company Bank* and *Mitchell Steever*, for an injunction and relief. The complaint alleges, in substance, that on the 13th day of December, 1855, *Mitchell Steever* and George W. Clason brought an action against Joseph Shepard, *Thomas Lyness* and others, to foreclose a mortgage on land in Milwaukee county, execu-

ted by Joseph Shepard and wife to Jane Garvey for $7000, and assigned to said *Steever* & Clason; that on the 26th of April, 1856, a decree of foreclosure and sale was rendered in said action, *Lyness* having made default; that on the 13th of May, 1856, *Lyness* made application to open the decree, and a stipulation was entered into between *Steever* & Clason and said *Lyness*, to the effect that *Steever* & Clason might sell the mortgaged property under their decree without prejudice, and that *Lyness* might answer and defend as though no order *pro confesso* had been entered, and that on such sale a sufficient sum of money should be considered in court to satisfy the claim of *Lyness* in case the court should decide in favor of the priority of his mortgage, and said *Steever* & Clason covenanted in said stipulation to hold themselves responsible for all money adjudged to *Lyness* in said case; that on the same day *Lyness* put in an answer setting up that he was the owner of a bond and mortgage which was a prior lien on the same premises, executed by said Joseph Shepard; that the premises were accordingly sold under said decree to *Steever* & Clason, which sale was confirmed September 1, 1856, and on the 3d of April, 1857, judgment was entered in said action, in substance, that the mortgage of *Lyness* was a prior lien to that of *Steever* & Clason, and that there was then due to *Lyness* on his bond and mortgage the sum of $1225, and that the plaintiffs, *Steever* & Clason, bring the same into court to be paid to the said *Lyness*, within twenty days after service of a copy of such judgment, "and that in default thereof execution issue against them to collect said sum for which judgment is hereby enered," &c.; that on the same day the judgment was docketed so that it became a lien on real estate of said *Steever* & Clason; that on the 11th of May, *Steever* & Clason appealed from said judgment to the supreme court, and to stay proceedings thereon, executed an undertaking, with sureties, to pay the judgment if it should be affirmed; that on the 24th of July, 1858, the circuit court entered a judgment of foreclosure and sale in the usual form, in favor of *Lyness*, for $1376.33; that *Steever* & Clason appealed from that judgment to the supreme court on the 19th of August, 1858, and gave

an undertaking, with sureties, to pay the value of the use of said premises if the judgment was affirmed, and any deficiency not exceeding $1200; that the last named judgment was affirmed by the supreme court on the 4th of January, 1860; that on the 7th of June, 1856, Clason sold and conveyed his interest in the mortgaged premises, being an undivided half, to said *Steever*, and *Steever* executed his note for $1700 payable to Clason or order on the 1st of July, 1859, with eight per cent. interest payable semi-annually, secured by a mortgage on the premises executed by *Steever*, and that Clason, on or about the 17th of July, 1858, assigned the said note and mortgage to the plaintiff in this action, and guaranteed the payment of the note to him to the extent of $1450 and twelve per cent. interest thereon from that date; that on the 12th of December, 1860, *Downer* commenced an action in the county court of Milwaukee County, against *Steever* and others, to foreclose the mortgage so assigned to him by Clason, and obtained judgment of foreclosure and sale in such action on the 1st of July, 1861, for $2182.31, besides costs; that the premises in question were sold on such judgment to *Downer*, on the 12th day of October, 1861, which sale was subsequently confirmed; that soon after the *Lyness* judgment of foreclosure and sale was affirmed in the supreme court, *Downer* frequently inquired of *Steever* if the *Lyness* judgment was paid, and *Steever* at one time informed him that he had paid $800 thereon, and showed him a receipt therefor, and assured him he should pay the remainder in a very few days; that on or about the 1st of March, 1860, *Steever* assured him that he had paid such judgment, and had a receipt in full from *Lyness's* attorneys, and that the same had been or would be discharged of record, which *Downer* believed to be true and still believes; and that re lying upon such information he did not commence a foreclosure of the mortgage held by him so soon by several months, as he would, had he known or been informed that the *Lyness* judgment remained unpaid. The bill further alleges that on or about the 9th of March, 1860, J. H. Paine & Son, who were attorneys of record for *Lyness*, made an entry of full satisfaction in the judgment docket opposite

the entry of the personal judgment in favor of *Lyness* against *Steever* & Clason, and that the said personal judgment was discharged, and thereby the said judgment of foreclosure and sale in favor of *Lyness* was also discharged; that *Lyness* had, prior to March 9th, 1860, received from *Steever*, in money or its equivalent, the full amount of said judgment of foreclosure and sale, and Paine & Son, as his attorneys, had given their receipt in full of said judgment, and said judgments were then fully paid and satisfied, and are or ought to be discharged of record ; that about a year thereafter, the defendants, or some one of them, persuaded *Lyness* to assign his judgment of foreclosure and sale to the defendant *The Wisconsin Marine & Fire Insurance Company Bank*, and such assignment was filed among the papers in that action; that the defendant *Miller* claims that he indorsed, for *Steever's* accommodation, a note for $1000, which was discounted by said bank, and that the proceeds thereof were used in paying the balance due on said judgment of *Lyness*; that *Miller* was instrumental in procuring the assignment of the *Lyness* judgment to the *Bank*, and claims that the assignment is valid and that the *Lyness* judgment still remains in force and unsatisfied, and that said *Bank* or *Miller*, on the payment of said note or one given in renewal thereof, has the right to be subrogated to the rights of said *Lyness* and to enforce said judgment; and that they are proceeding to sell said premises under said judgment, and the plaintiff fears that they will sell the same unless enjoined by the court; that the claims of said *Miller* and said *Bank*, and said assignment of the *Lyness* judgment, are a cloud upon the title of the plaintiff; that *Steever*, at the time the personal judgment in favor of *Lyness* against him and Clason was rendered and docketed, owned divers lands on which such judgment was a lien, which he has since conveyed absolutely or by mortgage, and that when said personal judgment was discharged, Hunn & Crosby had a subsequent judgment against *Steever*, upon which they issued execution and sold still other lands belonging to him; that if such personal judgment in favor of *Lyness* against *Steever* and Clason had not been paid, the plaintiff would have had the right, as the assignee

of the mortgage from *Steever* to Clason, to pay *Lyness* whatever was owing to him on said two judgments in his favor, and to be subrogated to his rights, including the right to enforce such personal judgment against Clason and *Steever* and against their sureties in said undertaking on appeal, which right he has now lost; and that *Steever* is now insolvent. The plaintiff prayed for a temporary injunction to restrain the threatened proceedings on the *Lyness* judgment of foreclosure and sale, and that such judgment might be satisfied of record, and that *Miller* and the *Bank* might be perpetually enjoined from selling or attempting to sell said premises under and by virtue of said *Lyness* judgment; that if the defendants or either of them had any rights, by subrogation or otherwise, to enforce the *Lyness* judgment, they might be required to exhaust their remedy on the personal judgment against *Steever* and Clason and their sureties in said undertaking on appeal, before selling the mortgaged premises; and that in case it should be found that the judgment of foreclosure and sale in favor of *Lyness* was still in force, and that it would be inequitable to compel them to resort to their personal remedy against *Steever* and Clason and their said sureties before selling said premises, an account might be taken of the amount due them on said judgment, and that upon the plaintiff paying the same, he might be subrogated to the rights of *Miller* and the *Bank*, or either of them, &c.

The *Bank* answered that it had assigned the *Lyness* judgment to *Miller*, and disclaimed any interest therein. The answer of the defendant *Miller* alleges that the personal judgment against *Steever* and Clason in favor of *Lyness* was annulled by the subsequent proceedings and decree of the court in that cause; that before its rendition the mortgaged premises became the homestead of *Steever*, and he resided on them until after the plaintiff purchased the same under his judgment as mentioned in his complaint; that *Lyness's* attorneys, on the 24th of July, 1858, applies to have the personal judgment against *Steever* and Clason vacated, and the usual decree of foreclosure and sale rendered; and that thereupon the court made a decree, reciting that it had been

OF THE STATE OF WISCONSIN.

617

June Term,
1862.

DOWNER
v.
MILLER et al.

shown that its decree of the 3d of April, 1857, had not yet been enrolled, but remained under its control, and that said decree was defective in not requiring the sale of the mortgaged premises according to the practice of the court—and ordering in the usual form foreclosure and sale of said premises for the payment of the *Lyness* mortgage, and a personal judgment against Shepard for any deficiency; that when the plaintiff purchased his mortgage from Clason, he had full knowledge of the mortgage of *Lyness*, and that with full knowledge of the *Lyness* judgment of foreclosure the plaintiff extended to *Steever* the time of payment of his note, in consideration of *Steever's* promising to pay interest on the whole debt at the rate of twelve per cent. per annum; but the answer denies that *Steever* made the assurances mentioned in the complaint in reference to the payment or discharge of the *Lyness* judgment, and alleges that *Steever* at all times claimed and represented to the plaintiff, that $1000 of the amount paid to *Lyness* had been raised by an indorsement of a note in bank for that sum, and that the decree was kept open and in force for the benefit of the indorser, and that when that note was paid by him (*Steever*) the decree would be satisfied of record.   The answer also denied that the plaintiff had delayed foreclosing his mortgage for the reasons stated in his complaint, but alleged that such delay was pursuant to his said agreement with *Steever*, extending the time of payment. It also alleges that the plaintiff had no knowledge or information of the entry on the judgment docket of the satisfaction of the personal judgment against *Steever* and Clason, until a few days before he commenced this action, and that the defendant had no knowledge or information of such judgment or order therefor, or of the alleged satisfaction thereof, until about the 12th of October, 1861, and that said satisfaction as to the defendant *Steever* was vacated the day before the said mortgaged premises were sold to the plaintiff.

The answer also alleges that on the 5th of March, 1860, *Steever* called on said *Miller*, and stated that the premises in question were about to be sold on the *Lyness* judgment, which was the first lien thereon, for a balance of about $1000, and that he had an understanding with

*Lyness's* attorneys that the judgment would remain open and unsatisfied of record, and be assigned to any person who would assist him, to raise the money and stop the sale; that *Steever* proposed to him, that if he would indorse his, (*Steever's*) note to the *Wisconsin Marine & Fire Insurance Company Bank* for $1000, at sixty days, for that purpose, said decree should remain unsatisfied of record, and be assigned to him for his security as such indorser; that relying upon said promise, said *Miller* did, on that day, indorse a note of said *Steever's* for that amount, which was discounted at said *Bank*, and the proceeds paid to the attorneys for said *Lyness*; that at the time said money was paid, *Steever* requested an assignment of said decree, which said attorneys promised to procure, but had not done so; that when said money was paid, *Steever* took a receipt therefor from *Lyness's* attorneys only as evidence of such payment, but that the money was not paid with the intention of having it go in satisfaction of the decree; that *Lyness*, at the request of the defendant *Miller*, in pursuance of the said promise of his attorneys, assigned his decree to said *Bank*, and that the assignment was recorded at the foot of said decree on the 3d of February, 1861, and filed in the office of the clerk of the court; that said note was not paid at maturity, but was renewed from time to time by defendant's indorsement, *Steever* paying the discount on such renewals, and that the assignment was taken from *Lyness* to the *Bank* because the note had not been paid, but that on or about the 25th of September, 1861, a renewal note for $1000 was made by *Steever* and indorsed by said *Miller*, payable in thirty days, and *Steever* failing to pay the discount said *Miller* paid it, and thereupon the *Bank* assigned the *Lyness* decree to him, which assignment he caused to be filed and recorded; that on the 10th of October, 1861, and before the sale of the premises by the sheriff to the plaintiff, he paid the *Bank* $1000 and took up said last mentioned note; that on that day he caused said premises to be advertised for sale by the sheriff of Milwaukee county, under said *Lyness* decree, and insists that he has a right to sell the said premises to collect

the said sum of $1000, with interest thereon from September 27th, 1861, and costs of sale; that at the time of the sale of the mortgaged premises by the sheriff to the plaintiff, the plaintiff had full notice of his rights in the premises, but directed the sheriff to proceed with the sale, and bid off the premises for $1000; that the property cost *Steever* $7000, and is now worth, at least $4000, and that said *Miller* has no other security for his claim than the said *Lyness* decree so assigned to him; that as to the conveyances of real estate alleged to have been made by *Steever*, he has no knowledge or information sufficient to form a belief; that said *Miller* furnished the plaintiff a statement of his interest in the premises a few days before such sheriff's sale, but that the plaintiff did not redeem said premises, but has always refused to do so. The answer demanded that the *Lyness* decree might be adjudged to be the first lien on the premises; that said *Miller* might have a lien under the same for $1000, with interest and costs, &c.; and general relief.

At the trial in the court below, the deposition of the plaintiff was read in evidence, in which he testified to the purchase of the mortgage mentioned in his complaint, from Clason, and that he has asked *Steever* for the money several times; that *Steever* told him if he would extend the time he would pay 12 per cent. interest; that he told him his mortgage was a second mortgage and he could not give him time. He testified further as follows: "I think I gave him as a reason why I could not extend the time, that Clason guaranteed the note and mortgage to me, and that such extension would release him. I afterwards told him that if I should give him time, it would release Clason, who guaranteed the payment of the note and mortgage to me. 'I cannot give you an extension for a day or an hour, or do anything that will affect Clason's liability.' *Steever* then said, 'I will give you 12 per cent. interest without any agreement to extend the time.' I told him I was going east * * * and it was not probable I would bring any suit on the note and mortgage until I returned, but I wanted him to understand I had the right to do so any moment I chose. I then

June Term, 1862.

DOWNER
v.
MILLER et al.

drew a writing at the bottom of the note, by which *Steever* agreed to pay 12 per cent. interest, and antedated it to July 4th, 1859, and *Steever* signed it. In January or February, 1860, I heard that the foreclosure judgment of *Lyness* had been affirmed by the supreme court. I asked *Steever* about his paying it and when he was going to do it, and he said very soon. I saw him a few days after at his office, and asked him if he had paid the *Lyness* judgment. He replied he had paid all of it but $1000, and took out and showed me what purported to be a receipt from J. H. Paine & Son, containing what purported to be a statement of the damages, interest and costs due to *Lyness* on his foreclosure judgment. Below the statement was a receipt of the payment of between $800 or $900, to the best of my recollection, reducing the judgment to $1000. * * * A few days after this I saw *Steever* again, and asked him if the balance of the *Lyness* judgment had been paid. He said it had, and he had the receipt of *Lyness* in full. I am not certain whether he showed me the receipt in full or not. My best recollection is that he added, 'It is discharged of record,' but of that I am not certain. I know that what he did say to me at that time gave me perfect confidence that the judgment was fully paid and satisfied, and that I should not be troubled with it any more, and I never had the least doubt that the judgment was paid and satisfied until December, 1860. I had inquired of *Lyness's* attorneys whether it was paid and satisfied, or whether *Lyness* had transferred it, and was informed that it was paid and satisfied in full, and that *Lyness* had refused to make any transfer of it; therefore I commenced my foreclosure suit without making him a party. If I had known that the *Lyness* judgment was not paid in full, or was in any way to be kept in force as a lien prior to mine, I should have no doubt commenced an action on the note I held against *Steever*, assigned to me by Clason, and in my judgment I should have been able to collect it, or a large part of it, without resorting to the mortgaged premises, provided such suit had been commenced and diligently prosecuted in the winter or spring of 1860. About July 13, 1860, I took *Steever's* note for $218, payable the 1st of October, en-

suing, for interest due on the note assigned me by Clason, which I should not have done if I had not then believed from the previous information given by *Steever*, that the *Lyness* judgment was paid. At the mortgage sale, B. K. Miller gave notice as attorney for the defendant *Miller*, that this *Lyness* judgment had been transferred to him, and was in force as a prior mortgage on the premises to the amount of $1000, and interest from some date, and costs of advertisement. I bid off the premises for $1000."

James H. Paine, testified that he was one of the attorneys for *Lyness* in the proceedings against *Steever* & Clason. "On receiving the last payment, I went to the clerk's office and paid the taxable costs and discharged on record a judgment that had been rendered in the same case in the nature of a personal judgment against *Steever* & Clason, under a stipulation of record in the case. I have no recollection that *Mr. Steever* said anything to me at that time about assigning the judgment to any one, or that any one had any interest in the judgment. Some days after the payment, *Steever* came to me and requested me to procure from *Lyness* an assignment to him of the judgment in *Lyness's* favor * * * Some few days after *Mr. Steever* made this request, I saw *Lyness* and told him what *Steever* wanted. He refused to make any assignment." The witness also testified that he had the sole management of the matter and that his son had nothing to do with it. "Before receiving the money, or at the time of it, we made no agreement with *Steever* to procure *Lyness's* assignment of the judgment, and he made no such proposition to us, nor any proposition of the kind. Nothing was said about an assignment at the time the money was paid. There was no agreement whatever made as to the judgment remaining open or unsatisfied, and no proposition or talk whatever was had on the subject." The plaintiff then put in evidence a receipt in full for the *Lyness* judgment, dated March 5th, 1860.

The defendants read in evidence the record in the case of *Mitchell Steever* and George W. Clason against Joseph Shepard and others, mentioned in the complaint in this action; an assignment made by *Thomas Lyness* to the *Wisconsin Ma-*

*rine and Fire Insurance Company Bank*, of the foreclosure judgment in his favor, which assignment was dated February 1st, 1861, and filed February 4th, 1861; the assignment of the *Bank* to the defendant *Miller* and its record; an order vacating the satisfaction of the personal judgment against said *Steever* & Clason, made October 12th, 1861; the papers and record in the foreclosure suit of *Downer* against *Steever and others* in the county court of Milwaukee county, being the same mentioned in the complaint.

The defendants then offered in evidence the affidavit of James H. Paine, upon which the attorneys of *Lyness* moved for the judgment of foreclosure mentioned in the pleadings, which contained the following statement: " It was agreed in the progress of the suit, between myself as attorney of *Lyness* and the said *M. Steever*, that in case the court should decide that the mortgage of the said *Lyness* was a lien on said premises superior to the former mortgage of Shepard to Garvey and wife, sold to *Steever* & Clason, then *Steever* & Clason should bring the money due on *Lyness's* bond and mortgage and costs into court, and it was upon this understanding that the decree was drawn from which the appeal was taken to the supreme court. Soon after the decision by the circuit court, I called on *Mr. Steever* for the money due to *Lyness*, and he neglected to pay it. I have also asked him for the money since the return of this cause from the supreme court, but he has neglected to pay or bring the money into court. Under this state of facts, I ask the court to vacate its former decree, and to make the decree for the sale of the mortgaged premises according to the usual practice of the court."

The defendant *Miller* testified, among other things, to the agreement between himself and *Steever* about the indorsement, and also to *Steever's* statements to him about the *Lyness* judgment, and the transactions between himself and *Steever* and the *Bank*, and the payment of the note, as detailed in the answer; that he indorsed only upon the agreement that the *Lyness* decree should remain open and unsatisfied of record for his security; that on or about the 1st of February, 1861, at his request, *Lyness* assigned his

decree to the *Bank*; that he took the assignment to the clerk's office and had it recorded and filed as alleged in his answer; that he then knew of no prior judgment against *Steever* & Clason; that he notified the officers of the *Bank* of the assignment; that he paid the *Bank*, September 23d, 1861, the $1000 note; and that on or about the 13th of October, 1861, the *Bank* assigned the decree to him. On cross-examination, he testified that *Steever* told him each time he indorsed after the first, that the decree had not been assigned, and that *Lyness* refused to assign it, but that it was still open and unsatisfied; and that he first heard of the receipt given by Paine & Son about the time he got the assignment from *Lyness*.

The defendant *Steever* testified to the agreement about the indorsement of the note by *Miller*, and the payment of the money and the transaction between him and *Lyness's* attorney about an assignment of the judgment, substantially as set forth in the answer of the defendant *Miller*; that he told *Downer* how he had raised the $1000 in bank by an indorser, and had the decree assigned to secure the indorser; that he (witness) considered it as good as asssigned, and that he subsequently told him who the indorser was, and never told him the decree was paid or discharged of record, or words to that effect; that he told *Downer* the first time that he came to the office of witness, after the payment of $1000, how he obtained it, and the agreement about the assignment of the decree to *Miller*.

The plaintiff was recalled, and testified in his own behalf among other things, that *Steever* never told him at any time that *Lyness's* decree was to be kept open and unsatisfied, and be assigned, or that it was assigned to *Miller* or any other person; that the first he ever heard of the assignment or agreement about keeping the decree open, or about *Miller* indorsing for *Steever*, was in a conversation between him and *Miller* about two weeks before plaintiff's foreclosure sale.

On cross examination, he stated that he never knew that there was a personal judgment against Clason and *Steever*, in favor of *Lyness*, until after his conversation with *Miller*, in September, 1861, and that he thought he did not know it un-

til after his foreclosure sale. It was proved on the trial that the satisfaction of this personal judgment had been vacated as to the defendant *Steever*, as alleged in *Miller's* answer.

The circuit court decided that the *Lyness* judgment of foreclosure and sale was not paid and satisfied, but was a subsisting lien, and the first lien on the premises mentioned in the complaint, and that the plaintiff had a right to redeem on paying what might be due *Miller*, and the costs; and judgment was entered accordingly, from which the plaintiff appealed.

*J. Downer, in pro. per.*:

1. *Lyness* received the money on his decree against Shepard, as *payment* and in full satisfaction of the judgment, and not with the intention of having it kept open or of assigning it; and the judgment was *dead* the moment *Lyness* or his attorneys received the money, and an assignment a year afterwards could not give it life in the hands of the assignee. Green's Ch., 458; 5 Cow., 671; 2 Seld., 449; 6 Ind., 320; 27 Me., 212. 2. In this case there can be no *subrogation*. *Shepard* is the *debtor* not *Steever*, and at the request of *Steever*—not at the request of *Shepard*—*Miller* indorsed and paid *Steever's* note. He is a *mere volunteer*, and cannot be subrogated to the rights of *Lyness* in the judgment against *Shepard*. *Swan vs. Patterson*, 7 Md., 168; 2 Bland's Ch. R., 166. 3. If the note and mortgage had been made by *Steever* instead of *Shepard*, then *Miller* would not have had any right of subrogation. The general rule is, that only those sureties who are bound in the original instrument have the right of subrogation. *Sanford vs. McLean*, 3 Paige Ch., 117; *Nolte & Co. vs. Their Creditors*, 7 Mart., N. S., 603; *Harrison vs. Bisland*, 5 Rob., 204; *Gadsen vs. Brown*, Speers' Ch., 37; 5 Dana, 241. 4. The personal judgment against Clason and *Steever* was valid. 9 Cow., 26, 233; 1 Humph., 80. It has been affirmed by this court, *Clason vs. Shepard*, 6 Wis., 369, and the judgment of foreclosure did not vacate it. Whatever may have been the intention of *Lyness's* attorney, no order vacating the personal judgment was ever made. 5. The plaintiff is injured by *Miller's* laches in not having the assignment made to him simultaneously with the pay-

ment of the money, and by trusting to *Steever's* representations and promises, and he cannot now redeem from the *Lyness* judgment so as to be subrogated to *Lyness's* right to enforce the personal judgment against *Steever* and Clason and their sureties on appeal, as the discharge of that judgment as to Clason would release such sureties; and as the premises are worth only enough to pay the plaintiff's mortgage, if *Miller* prevails the plaintiff will have to lose the amount in question. The party that has been careless should suffer. Whoever holds under the doctrine of subrogation, must have a greater equity than his opponent. *Erb's Appeal*, 2 Pa., 296; *Goswilers Estate*, 3 Pa., 203; *Himes vs. Keller*, 3 Watts & Serg., 403; *Armstrong's Appeal*, 5 Watts & Serg., 352; *Lloyd vs. Galbraith*, 32 Pa. St., 132; *Patterson vs. Pope*, 5 Dana, 244. If the *Lyness* judgment is open and unsatisfied, then *Miller*, by indorsing *Steever's* note, delayed its collection out of the personal judgment against *Steever* and Clason, for it could not be collected by any person after *Miller* indorsed the first note until it became due, and this extension of time for the payment of the personal judgment discharged the sureties on appeal from that judgment. *Downer*, on payment of the first mortgage debt, would have had a right to be subrogated to *Lyness's* rights and to enforce the undertaking against the sureties, and this right he has lost by *Miller's* acts. 6. The discharge of the personal judgment against Clason and *Steever*, paid and discharged both the *Lyness* personal and foreclosure judgments. Payment on the personal judgment, which was collateral to the other, was payment on the principal. 7. The assignment of the *Lyness* judgment could only be made by *Lyness*, not by *Steever*, and when *Lyness* received the money and refused to make the assignment, that was the end of the matter so far as an assignment was concerned. The agreement for the assignment was of no effect, as it was not made with the owner.

*Wm. P. Lynde* and *Mat. H. Carpenter*, for respondents:

The *Lyness* mortgage was the first lien on the premises. *Steever* and Clason purchased subject to it. It was no personal debt of theirs, but was part of the purchase price. *Bel-*

June Term, 1862.

Downer
v.
Miller et al.

mont vs. Coman, 22 N. Y., 438. The plaintiff purchased his mortgage with full knowledge of Lyness's lien. Whether the personal judgment or order against Steever and Clason created a lien on their property or not, is immaterial, as it was abrogated and superseded by the subsequent judgment of foreclosure and sale, and this last decree was affirmed on appeal. Clason vs. Shepard, 10 Wis., 356. The satisfaction entered by Lyness's attorneys was merely carrying out their application to vacate that judgment upon making the decree of foreclosure and sale. Mere delay in proceeding to foreclose on a mortgage lien is no ground for relief. Downer purchased at the sheriff's sale with notice of Miller's rights, and subject thereto, and he then ceased to be a lien creditor, but became a purchaser under Steever, and as Steever could not dispute Miller's right to the decree, so Downer cannot. He has no equity that Steever had not. Jackson vs. Chamberlain, 8 Wend., 620 ; Barnes vs McClinton, 3 Penn., 67 ; Smith vs. Painter, 5 Serg. & R., 223–5; Weidler vs. The Bank, 11 Serg. & R., 138; Friedly vs. Scheetz, 9 Serg. & R., 156 ; Matthews vs. Aikin, 1 Comst., 595–604 ; 7 Paige, 248 ; 2 Johns. Ch., 125 ; 10 Paige, 249, 503.

The personal judgment against Steever & Clason was not founded on the original debt of Shepard to Lyness, but upon their stipulation to bring the money into court, which was outside of and collateral to the prior lien, and of his right to prosecute it. The land was the principal thing, and is to be first taken for the debt. Belmont v. Coman, 22 N. Y., 438 ; 4 Johns. Ch., 123. And release or satisfaction of the collateral does not discharge the principal, and other lien creditors cannot object. Dyott's Estate, 2 Watts & Serg., 489, 490 ; 10 Wis., 356. There can be no question but Miller indorsed the note, and the money was paid, with the intention on his part, and that of Steever, that the decree should be held for his use and benefit, and the decree is not satisfied. An assignment was not necessary. By the indorsement under the agreement with Steever, Miller became the equitable owner of the decree, and by the assignment the legal owner; and a court of equity will keep the decree alive to serve the purposes of justice and the actual and just intention of the par-

ties. *Harbeck v. Vanderbilt*, 20 N. Y., 395; *Cottrill's Appeal*, 11 Harris (Pa.), 294; *Matthews v. Aikin*, 1 Coms., 595; *Mooney v. Parker*, 18 Ala., 708; *Foster v. Fox*, 4 Watts & Serg., 92; *Campbell's Appeal*, 29 Pa. St., 401; *Fleming v. Beaver*, 2 Rawle, 128; *Kuhn v. North*, 10 Serg. & R., 399; *Goulding v. Bunster*, 9 Wis., 513; *Selleck v. Phelps*, 11 Wis., 380; *Horner v. Hower*, 39 Pa. St., 126; *Barnes v. Camack*, 1 Barb., 392. A verbal appropriation of securities to indemnify a surety is sufficient, and prevails over a subsequent assignment. *Hinkle v. Wanzer*, 17 How., 366; 5 Ala., 393. The receipt was not taken in satisfaction of the decree, and may be explained by parol. 12 How., 139; 19 id., 289; 22 id., 342; 17 id., 464. The bank, being the creditor of *Steever & Miller*, was entitled to *Miller's* security, and the assignment to it was valid. *Curtis v. Tyler*, 9 Paige, 432; *Heath v. Hand*, 1 Paige, 329; 37 Pa. St., 71.

*By the Court*, PAINE, J: It is not necessary to sustain the judgment in this case upon the principle of subrogation. If *Miller* had simply loaned his credit to *Steever* to enable him to raise the money with which to pay the *Lyness* judgment, *Miller* being in no way bound to pay it, either as security or otherwise, this alone would not have entitled him to be subrogated to the rights of *Lyness*. We know of no case that has ever carried the doctrine of subrogation so far as to hold that a mere loan of money, for the purpose of enabling the borrower to pay a debt, entitles the lender to be subrogated to the rights of the creditor whose debt was thus paid.

*Miller's* rights, therefore, must depend entirely on the effect of the agreement between him and *Steever*, and that we deem sufficient to justify the judgment of the circuit court. That agreement was, that *Miller* was to indorse for *Steever* so as to enable the latter to raise the money at the bank, but that the money was to be used not to pay and extinguish the *Lyness* judgment, but to procure an assignment of it to *Miller*, to indemnify him as indorser.

To use the money thus obtained to pay the judgment and have it discharged, would operate as a fraud upon *Miller*, and it is upon this ground that he was entitled to the relief

June Term,<br>1862.

DOWNER<br>v.<br>MILLER et al.

November 26.

given by the court below. It may be conceded that such relief could not have been given against any party who, relying upon the discharge of the *Lyness* judgment, has acquired an interest in the property for a valuable consideration, without notice of *Miller's* equitable rights. But the appellant here does not stand in such a position. His rights were subsequent and subject to the *Lyness* mortgage. They existed before the transaction between *Miller* and *Steever*, and were not acquired upon the faith of the discharge of the *Lyness* judgment upon the record. He is therefore in no position to insist that he is injured by allowing that discharge to be set aside and the judgment kept in force for *Miller's* security, according to the agreement between him and *Steever*. Where a prior mortgage or judgment has, by wrong or fraud, been discharged of record, a subsequent mortgagee, whose rights existed at the time of such discharge, cannot claim to be injured by allowing it to be set aside, and the prior mortgagee to be restored to his rights. If *Lyness* had been induced by fraud to enter a discharge of his judgment, would Downer have been in any position to object to its being set aside? Clearly not. And the principle is the same as the case now stands. *Miller* raised the money with which *Lyness* was paid, upon an agreement that he was to have the judgment as security. To deprive him of that security is a fraud upon him. To restore him to his rights is no injury to the appellant, for it leaves him just where he was.

It is true, he claims to have been injured by delaying the enforcement of his own claim, in consequence of *Steever's* representations that the *Lyness* judgment was extinguished. He says he might have redeemed the first mortgage, and then have enforced the personal judgment against Clason & *Steever*. But the case shows that this personal judgment was to have been vacated when the foreclosure judgment was entered as a substitute for it. And although it may not have been so entered on the record, the court would undoubtedly have caused it to be done at any time on a proper application.

The appellant therefore lost nothing there. Nor do we

think his delay to enforce his own claim can be regarded as such a change of position, on the faith of the record, as should enable him to object to the enforcement of the agreement between *Miller* and *Steever*. His own evidence shows that he never agreed to any extension of the time to *Steever* so as to release Clason the guarantor. Had he done so upon the faith of the *Lyness* judgment, and did it appear that he would now suffer loss by allowing that judgment to be enforced against the property, it might constitute a good objection upon his part. But the proof fails to show this. Nor is the fact that *Lyness* was no party to the agreement that his decree should be assigned for *Miller's* security, any reason why that agreement should not be enforced. It was a matter of indifference to him whether the decree was assigned or discharged, and where justice between others requires it to be assigned, he should not be allowed to prevent it upon the supposed technical right to control his own decree. The enforcement of this agreement between *Miller* and *Steever* without reference to the question whether *Lyness* assented to it, is entirely analogous to the principle of subrogation, where the assent or agreement of the creditor who gets his money is not essential to the right. If a surety pays a debt, he has a right to be subrogated to the securities of the creditor, and the latter would not be allowed to object, for it is a matter of indifference to him. It is equally true here, though *Miller's* right is not that of subrogation, but grows out of the agreement between him and *Steever*. That agreement is one which should have been enforced, even though *Lyness* had adhered to his refusal to assign the decree. But here he voluntarily consented in the end to make the assignment.

The judgment is affirmed, with costs.