R. M. STANGLER,. as Trustee of the Estate of Mary Kanan, Bankrupt, Appellant, v. MARY KANAN and Margaret F. Nichols, Sometimes Called Marguerite F. Hig. Nichols, and Mary Kanan and Elizabeth F. Fisher, formerly Elizabeth F. Nichols, Respondents.

(220 N. W. 443.)

Opinion filed July 3, 1928.

*Carr & Rittgers,* for appellant.

*C. S. Buck* and *George W. Thorp,* for respondents.

BURKE, J. This is an appeal from two judgments in actions brought by the trustee in bankruptcy of the estate of Mary Kanan, to set aside

certain transfers of real estate made by Mary Kanan to her two daughters, Margaret F. Nichols and Elizabeth F. Fisher, on the ground, that the transfers were fraudulent, and made for the purpose of hindering and delaying the creditors of Mary Kanan. By stipulation of counsel the two actions were argued and submitted to this court on the same briefs, the judgments to be the same in each case.

The trial judge made findings of fact and conclusions of law favorable to the defendants, and in a memorandum opinion states, that the evidence wholly fails to establish any conspiracy between the defendants to commit a fraud, and that the evidence falls far short of the degree of proof required to establish fraudulent transfers.

The plaintiff appeals from both judgments demanding a trial de novo in each case, and states that the issues are, first, were the transfers in question fraudulent as to the creditors of Mary Kanan? Second, does a secret trust exist whereby the property so transferred was in fact, in equity the property of Mary Kanan when she was adjudged a bankrupt?

It is the contention of the plaintiff, that the defendants in pursuance of a fraudulent agreement to defraud the creditors of Mary Kanan, on the seventh day of June, 1921, caused to be recorded in the office of the register of deeds of Stutsman county a deed executed by Mary Kanan to Margaret F. Nichols to the N. W. ¼ of section 11, and the N. E. ¼ of the N. E. ¼ of section 10 in township 138 north of range 68; that on the 19th day of May 1926, the defendants caused to be recorded in the office of register of deeds of Stutsman county a deed issued by The Carlos N. Boynton Land Company conveying to the defendant, Margaret Nichols, the S. E. ¼ of section 15, township 139, range 68. That all of said transfers were made without consideration, and in pursuance of a conspiracy between the defendants to defraud the creditors of Mary Kanan.

It appears from the evidence, that on July 17, 1905, Ferris Nichols, who was then the husband of the defendant, Mary Kanan, entered into a contract with John B. Fried of Jamestown, for the purchase of the N. W. ¼ of section 11, township 138, range 68. This contract Mr. Nichols later assigned to his wife, the defendant, now Mrs. Mary Kanan, on the sixth of August 1907; thereafter, John B. Fried deeded the said land to the defendant, who is now Mary Kanan, taking back a

mortgage on the land for one thousand dollars. He made advances to her from time to time for seed, and on June 7, 1921, when this real property was deeded by Mary Kanan to Margaret Nichols there was a mortgage against the said land for $2,000. Ferris Nichols had also filed a homestead on the N. E. ¼ of the N. E. ¼ of section 10, a forty-acre tract which was proved up by the defendant, Mary Kanan, after the death of her husband who died in the fall of 1907. These forty acres, together with the land purchased from John B. Fried, the N. W. ¼ of sec. 11, twp. 138, range 66, is the land deeded by defendant, Mary Kanan, to the defendant, Margaret F. Nichols on the seventh day of June 1921.

After the death of her husband the defendant, Mary Kanan, married a man by the name of Kanan who later left his wife and the country. Mrs. Kanan is an elderly woman who does not write or read the English language. She made her living by selling laces and mending rugs, she claims on account of poor crops and the general depression in business she could not pay the taxes on her lands, the interest on the mortgages, and could not keep up the payments she was required to make on a land contract for a half section of land which she held under a purchase contract; that the mortgage had increased on the land purchased from John B. Fried from one thousand to two thousand dollars; that her first husband while living had told her that he intended the farm land for his daughter, Margaret, and some town lots which he held in the village of Medina for his daughter, Elizabeth, that in June, 1921, she went into the bank at Medina and asked Mr. Schroeder to make deeds of conveyance. Mr. Schroeder said, that he was too busy at the time, and that she later went to Jamestown, and had the deeds made by John B. Fried in accordance with her husband's wish. Thereafter, Margaret Nichols paid the taxes, the interest on the mortgage, built a barn, moved a granary from the farm on to one of the lots in town, made a house of it, the rent of which was turned over in payment for building the house. Mrs. Kanan also held some stock in a Western Building Association, and about 1921, she claims, that she could no longer make the yearly payments, and that she was going to drop it, and Margaret, who was teaching school said, if she would let her have the stock she would pay the yearly assessment, which amounted to thirty-six dollars per annum; that she let Margaret have the stock,

and Margaret has paid the yearly installments since that time; that she could no longer pay the deferred payments on the land contract with the Boynton Land Company, and in May 1926, a Mr. Fox representing said land company, told her that she would have to pay the deferred payments or they would have to cancel her contract. She had no money to pay the deferred payments and when she told her daughter, Margaret, that they were going to cancel the contract, the daughter, Margaret, went with her brother-in-law, Gottlieb Fisher, to see Gottlieb's father, Fredrick Fisher, from whom she borrowed $1,000. Margaret Nichols was teaching school at Cleveland at the time, and Fredrick Fisher did not have the thousand dollars ready for delivery; and on reporting to her mother what she had done, her mother and Fox went to see Fisher who had the money at that time, and gave them a check for the amount which was turned over to the Boynton Land Company, and a deed conveying one hundred and sixty acres of the land to Margaret F. Nichols was executed. There is some dispute over the delivery of the mortgage and the note to Mr. Fredrick Fisher, and as to whom the Fredrick Fisher check was made payable, but these questions we regard as entirely immaterial. It is undisputed that Mary Kanan could not make any payments on the land contract, that the land company through its agent, Mrs. Fox, had notified her that they could not carry the contract any longer, that they had to have the money or that they would cancel the contract. In this dilemma Margaret Nichols stepped in, borrowed the money which was the full consideration demanded by the land company for the conveyance of a quarter section of land. This money was accepted by the land company and a deed issued to Margaret F. Nichols. It makes no difference who delivered the note and mortgage to Fredrick Fisher, it was a note and mortgage executed by Margaret Nichols and she alone is liable. It makes no difference to whom the check issued by Fredrick Fisher was made payable. It was Margaret Nichols' money accepted by the Boynton Land Company in payment for the land which they conveyed to her, and there is nothing fraudulent about it.

It is the contention of the plaintiff, that the real property involved was deeded back to Mary Kanan by her daughters, and that it was never the intention of the parties to convey the title to said land to the said daughters; that the transfer was made for the purpose of defrauding the

grantor's creditors, but the great weight of the evidence is against such a conclusion.

All the evidence there is of fraud in the other conveyances is the testimony of C. E. Schroeder, cashier of the Security State Bank of Medina, and S. J. Kasiler, assistant cashier of said bank, who state that:

"The defendant, Mary Kanan and Margaret Nichols, came into the bank at Medina, and wanted Mr. Schroeder to draw some deeds of the farm land to Margaret Nichols, and a deed to the city property to Elizabeth; that Mr. Schroeder told them that he was too busy. Mr. Kasiler claims, that later Mary Kanan came in, and wanted to borrow some money. Mr. Schroeder told her he couldn't loan her any money, that she had made transfers, well, she said, she was all right, he needn't be afraid of the transfer because she had it deeded back from the girls which was all her property and everything was O. K.; and at the time Elizabeth married, Mary Kanan came in and said, she was glad that she had got it deeded back from Elizabeth."

According to Kasiler's testimony neither of the girls was present when Mary Kanan talked about having deeds from the girls. He does not claim that either of the girls was present at the last two conversations.

Mr. Schroeder testified that—

"In the early spring of 1921, Mary Kanan and her daughter, Margaret, came into the bank, they had received from an attorney a notice about some indebtedness that she owed and she wanted to transfer her property, and she had made up her mind to transfer the farm property to Margaret, and the city property to Elizabeth, and they wanted me to make out the deeds. They said they wanted to do it to protect themselves against those debts she mentioned and I was to make deeds conveying the property back to Mrs. Kanan. I didn't care to make the transfer so I told her I was too busy that day. About a week later they came back, she had a letter from an attorney, and asked me if I couldn't go and see him and get him to stall off for a while, and she wanted to borrow some more money and she told me she had deeds conveying that property back to her. The assistant cashier was there and heard it, and she said she was going to pay up, but she was going to beat the rest of the creditors. She wanted me to call and see the attorney

and to use my influence to get him to wait until the four months period had elapsed." This was in June, 1921, when it is claimed that Mary Kanan asked Schroeder to get the creditors to wait until the four months period had expired. Mary Kanan did not file her petition in bankruptcy until 1927, about six years later, and the creditors did wait, not only during the four months period, but for six years, and until she made application for discharge in bankruptcy, when the claims were filed, objections were made to her discharge, and Mr. Stangler who is interested with Mr. Schroeder as a creditor, was appointed trustee and brought this action. Mrs. Kanan denies that she ever told Mr. Schroeder or anyone else, that she was making these transfers to defraud her creditors, or that she had deeds back to her from her daughters, that no such deeds were ever made and there never was any intention to make them. It is also denied by Elizabeth and by Margaret, who state that the only conversation she ever had with Mr. Schroeder was one day when he stopped her on the street and asked her to carry her account in his bank.

Mr. Fried who made the deeds, that were executed, testified, that there were no deeds executed by Margaret and Elizabeth conveying the said property back to their mother, made by him, and there was nothing said about such conveyance; that Mrs. Kanan said she wanted to convey the land to her daughter because it was the wish of their father.

None of the banks would assist her even in getting seed for the land. Both her daughters helped by turning over their pay as teachers until Elizabeth married.

Mike Remboldt, a witness for the plaintiff, who worked in, and was interested in the lumber company from which material was purchased for the building of the barn testified, that Margaret's checks, one for $250, and one for $350 were received in payment, and Mrs. Kanan told him that Margaret was the one to pay the bill. The transaction with the Boynton Land Company shows the conditions existing in that neighborhood. Mr. Fox testified, that the land at the time of the transfer in 1921, was worth not less than $20 per acre, and the value had not changed up to the time of the trial in July, 1927. In other words, land values were dormant. He did not know of any sales and they took a loss of $2,300 on the land conveyed to Margaret in 1926. Receiving $1,000 for the land conveyed to Margaret, and losing $2,300

on the deal would fix the land value at $3,300 a little more than $20 per acre, and yet the land company preferred $1,000 "in the hand" to $3,300 in the land. The record shows that there were no sales of land during that period; that there was no market for land, and it had no market value. No doubt Margaret, or any other person, could have purchased the other quarter from the Boynton Land Company at the same price. It is clear that if Margaret and Elizabeth had not paid the taxes on the lands, and interest on the mortgages, the property would long since have been lost, and it does not seem just or equitable for the creditors who knew about these transfers to sit quietly by watching the struggle of two young teachers, with interest, taxes, improvements, and farming operations during a period of depression, and deflation for six years, and then step in and reap the fruits of their industry and thrift; but it is not necessary to decide this case upon the question of laches, for the findings of the trial court, that the transfers were not fraudulent are sustained by the evidence, and the judgments are affirmed.

NUESSLE, Ch. J., and BURR, BIRDZELL, and CHRISTIANSON, JJ., concur.