Levy vs. Martin, imp.

## LEVY vs. MARTIN, imp.

*October 14, 1879 — January 7, 1880.*

(1) *Change of venue.* (2) *Subrogation.*

1. An application to change the place of trial of a foreclosure suit, for prejudice of the judge, *held* to have been properly denied, where made in behalf of one only of several defendants.

2. At the request of executors, plaintiff advanced moneys to pay a mortgage of lands of the estate, held by M. and past due, and also to pay accrued taxes on the lands; and he took as security for such advances a mortgage of the same lands made by the executors in pursuance of a license of the county court, which was, however, invalid. When his first mortgage was thus paid, M. owned subsequent mortgages of the same lands, executed by the testator's widow while she had a dower interest therein; and he refused to assign the first mortgage to plaintiff, and discharged it of record. *Held,* that plaintiff, as security for his advances, is entitled to be subrogated to M.'s rights as mortgagee under such first mortgage; and this not only against the heirs, but also as against M.'s subsequent mortgages.

APPEAL from the Circuit Court for *Milwaukee* County.

I. In October, 1869, Charles Eul and his wife, Mary Ann Eul, executed a mortgage of land to *Matthew Martin*, to secure a note of even date given by said Charles to *Martin*, for $600, payable in three years, with interest at ten per cent. The mortgage contained a provision for paying a solicitor's fee of $50 in case of a foreclosure; and it was immediately recorded. Charles Eul was the owner in fee of the mortgaged premises from the date of the mortgage until his death, November 30, 1870. He left surviving him his said wife, and several infant children; and by his will (duly admitted to probate) the

mortgaged land was devised in equal undivided parts to his children, subject to the life estate of his widow; and he left no other property. At the time of his death he was indebted to *Martin* in the full sum secured by the mortgage.

II. In April, 1873, said Mary Ann Eul, widow of Charles Eul, having intermarried with one Richter, she and Richter mortgaged the same real estate to *Martin* to secure a loan to them of $400; and in April, 1874, they executed another like mortgage of the same property to *Martin* for another loan of the same amount. In his answer herein *Martin* alleges that these sums were borrowed and used for the purpose of making necessary and permanent improvements and repairs on the premises, with the assent and approval of the executors and of all persons interested in the estate; but the court found that the moneys were not so used.

III. In December, 1876, the executors of the will presented a petition to the county court, stating that the principal sum secured by the $600 *Martin* mortgage, with interest from April 1, 1876, was due and unpaid, and that *Martin* was pressing the payment, and was about to commence foreclosure; and praying for license to make a new loan, secured by mortgage of the same land, of a sum sufficient to pay the amount due on said $600 *Martin* mortgage, together with the taxes theretofore assessed against said premises, and the expenses of administration. In January, 1877, the county court made an order directing the executors to mortgage the land to secure a loan not exceeding $800, with interest at ten per cent., for the purposes above named. On the 31st of the same month, the executors applied to the plaintiff, *Levy*, for a loan of $800, stating that they were duly authorized to borrow that sum and to execute a mortgage therefor which would be a first lien on said real estate, and agreeing with him that if he would loan the money they would, in addition to giving him such new mortgage, procure and deliver to him said $600 *Martin* mortgage, with an assignment by *Martin*. For the purposes

and upon the representations above stated, plaintiff lent them
$800, which was applied for said purposes; and the executors
in both their representative and individual characters, executed
to him a note for the amount, payable in two years, with in-
terest at ten per cent., secured by mortgage on said real estate,
with a clause for the payment of $75 as solicitor's fee in case
of a foreclosure; and this mortgage was duly recorded.   The
execution of such mortgage was reported to the county court
by the executors, and an order of confirmation there made.
All the proceedings in the county court were regular, except
that no guardian was appointed to represent the infants
therein.   The executors did not procure an assignment to
plaintiff of the *Martin* $600 note and mortgage, but delivered
to him the note and mortgage with a release thereof, which
was recorded.   No payment has been made on the executors'
mortgage except the interest for one year.   The executors, in
their individual character, are insolvent.

This action was brought to foreclose the $800 mortgage
given by the executors; and the plaintiff, after alleging the
facts set forth in paragraphs I and III, *supra*, further prays
that the money advanced by him may be declared a lien upon
the real estate in question; that he may be subrogated to all
the rights of *Martin* under said $600 mortgage; that the sat-
isfaction of said mortgage may be cancelled, and the mortgage
declared a continuing lien upon the premises; that all the de-
fendants may be barred and foreclosed, etc.; that the premises
may be sold, unless redeemed as provided by law, to make the
amount of plaintiff's said advances, with interest, costs and
$75 solicitor's fees, etc.

The executors did not answer.   *Martin* answered, setting
up the facts stated in paragraph II, *supra*.   His answer also
denies that the executors ever promised to obtain from him
an assignment to plaintiff of the $600 note and mortgage, or
that plaintiff, in making his loan to them, relied upon any
such promise or understanding, and avers that the money ob-

Levy vs. Martin, imp.

tained from plaintiff was paid to him *(Martin)* for the sole purpose of satisfying and extinguishing said $600 note and mortgage, as was well understood by the plaintiff, and that plaintiff never claimed that those securities should have been assigned to him until after the commencement of this action.

The infant children of the testator, Charles Eul, appeared by guardian *ad litem*, and answered, setting up the want of notice to them of the application of the executors for a license to give the $800 mortgage, and also claiming that plaintiff ought not to be subrogated to the former rights of *Martin* under the $600 mortgage, because the payment of that sum by him was voluntary.

When the cause was at issue, *Martin* moved for a change in the place of trial for prejudice of the circuit judge; but the motion was denied.

The facts found by the court are stated substantially in paragraphs I to III, *supra*. Upon those facts the court held that the plaintiff was entitled to a judgment, against all the defendants, of foreclosure and sale of the real estate in question, to make the amount of his $800 mortgage, with interest and costs, and $50 as solicitor's fee. From a judgment in pursuance of this determination, *Martin* appealed.

For the appellant, there was a brief by *Markhams & Smith*, and oral argument by *E. P. Smith*. Among other things, they contended, 1. That the defendant *Martin*, upon filing his affidavit, had an unconditional right to a change of venue; the objections taken in *Wolcott v. Wolcott*, 32 Wis., 63, and *Taylor v. Lucas*, 43 id., 158, having no application to a case in equity against a party in default, or one answering severally, or one having a common interest but appearing by a separate attorney. R. S., § 2525; 1 Van Santv. Eq. Pr., 258, and cases cited; Vorhees' Code, 9th ed., 147; *Brittan v. Peabody*, 4 Hill, 62, note; *Job v. Butterfield*, 5 Exch., 827. 2. That the circuit court had, upon the case made, no jurisdiction in equity to grant the relief sought. It did not appear but that

the statutory remedy was ample, by application to the probate court for leave to mortgage or to sell the equity of redemption. R. S., § 3878; *Batchelder v. Batchelder*, 20 Wis., 452; *Brown's Appeal*, 66 Pa. St., 155; *Bresee v. Stiles*, 22 Wis., 120; *O'Dell v. Rogers*, 44 id., 173. 3. That there was no ground for declaring an equitable lien, or for the application of the doctrine of subrogation. In general, one creditor has no priority over another on the ground that he advanced the money out of which the debtor's property was made. *Morton v. Naylor*, 1 Hill, 583; *Hoyt v. Story*, 3 Barb., 262; *Burn v. Carvalho*, 4 Mylne & C., 690; *Watson v. Wellington*, 1 Russ. & M., 602; *Miller v. Price*, 20 Wis., 117. The case was that of an ordinary loan to pay a debt, except that it was necessarily made under a judicial license; but the lender, as in other cases, had it in his power to assure himself that the security was ample. He cannot now claim to be subrogated to the rights of the creditor. *Downer v. Miller*, 15 Wis., 627; *Miller v. Price*, 20. id., 117; *Pelton v. Knapp*, 21 id., 63; *Watson v. Wilcox*, 39 id., 643; *Sanford v. McLean*, 3 Paige, 117; *Banta v. Garmo*, 1 Sandf. Ch., 383. Nor could the executors, by paying taxes, create a lien in favor of the person who loaned the money so used, superior to all other private liens. *Horton v. Ingersoll*, 13 Mich., 409; *Wilcox v. Bates*, 45 Wis., 145; 2 Washb. R. P., 229, 230. But whatever might be thought of the question of equitable lien were there no intervening rights, it is clear that where such rights exist, the lien cannot be declared except as subject to them. *Pelton v. Knapp*, 21 Wis., 69; *Patterson v. Pope*, 5 Dana, 241; *Jenkins v. Continental Ins. Co.*, 12 How. Pr., 68; Jones on Mort., § 1081. The relief sought would compel the appellant, against his will, to transfer to a third party a mortgage wholly paid for with his own funds, and held as a protection to his subsequent liens, and thereby render it incumbent upon him to redeem from the same security, no matter at what disadvantage or cost. He may well decline to again assume the

relation of creditor to the mortgagor under such circumstances. There might be some reason in plaintiff's demand had he been obliged to pay this mortgage in order to protect other interests; but he was a mere volunteer. It is not claimed that he would have the right of subrogation were the executor's mortgage valid; then why when it is invalid? The mortgage sought to be revived was paid, intentionally and absolutely. It would seem that by such payment it had become effectually blotted out. Story's Eq. Jur., §§ 499, note 1, and 1227; *Guy v. Du Uprey*, 16 Cal., 195; *Palmer v. Yager*, 20 Wis., 91.

For the respondent, there was a brief by *Leander Wyman*, with *Frank B. Van Valkenburgh*, of counsel, and oral argument by *Mr. Van Valkenburgh*. As to the propriety of the order denying a change of venue, they cited *Wolcott v. Wolcott*, 32 Wis., 63; *Rupp v. Swineford*, 40 Wis., 28. They further argued that the money advanced by plaintiff was all expended to discharge liens confessedly prior to appellant's two mortgages; that the latter covered, at best, only the dower interest of the testator's widow, which was subject to the payment of the debts of the deceased, taxes and expenses of administration; that to continue the priority of the liens in favor of the plaintiff placed appellant in no worse position than he would have occupied had the money not been loaned to the executors, while to do otherwise would be giving him an unjust, illegal and inequitable preference; and that as plaintiff had advanced his money in good faith, in pursuance of proceedings had in the proper court, and in the belief that he was securing a valid mortgage upon the premises in controversy, it could not be said, in any reasonable or just sense, that he was a mere volunteer. *Blodgett v. Hitt*, 29 Wis., 185, and cases there cited; *Winslow v. Crowell*, 32 id., 662; *Mohr v. Tulip*, 40 id., 66, and 44 id., 274.

COLE, J. The application for a change of the place of trial was founded on the affidavit and made in behalf of the defend-

ant *Martin*, alone. It was therefore properly denied, under the decisions of this court in *Wolcott v. Wolcott*, 32 Wis., 63; *Rupp v. Swineford*, 40 Wis., 28; *State ex rel. Cuppel v. The Chamber of Commerce*, 47 Wis., 670. The learned counsel for *Martin* attempted to distinguish this case from the above; but we think it comes fully within the principle of those decisions.

The really important question in the case is, whether the plaintiff, upon the undisputed facts, is equitably entitled to a prior lien to the extent he would have if, as assignee, he were foreclosing the $600 *Martin* mortgage. It is insisted by his counsel that the circumstances under which he advanced his money to pay that mortgage justly entitle him to such priority in this action, and that he should be treated as succeeding to the rights of *Martin* under that mortgage. This right, it is said, is founded upon the principles of subrogation which this court has recognized and enforced in other strictly analogous cases. *Morgan v. Hammett*, 23 Wis., 30–40; *Blodgett v. Hitt*, 29 Wis., 169; *Winslow v. Crowell*, 32 Wis., 642–662; *Mohr v. Tulip*, 40 Wis., 66.

If this position is sustainable in law, it will, of course, be immaterial to inquire as to what interest or estate was encumbered by the two mortgages given *Martin* by Mrs. Richter and husband, April 30, 1873, and April 22, 1874. It is assumed, for the purposes of the case, that *Martin* acquired some interest or lien under these mortgages upon the premises sought to be sold in this foreclosure suit. It was admitted on the trial, by the plaintiff, that Mrs. Eul (who afterwards married Henry Richter) had her dower interest in the land described in the mortgages, at the time of her husband's death, and that such interest continued. This admission cannot properly be disregarded, and will not be.

It is not claimed that this right of subrogation, or to a prior lien, depends upon any express agreement made with *Martin* that his mortgage should be assigned or kept alive for plaint-

iff's benefit. It is a fair inference, however, from the evidence, that the plaintiff's agents, when they loaned the money to the executors to take up that mortgage, expected it would be assigned and not paid, and that this was one inducement for making the loan. Mrs. Richter testified that she told Becher and Milbrath, when she applied for the loan, that she would get an assignment from *Martin*, but when she asked him to assign it he refused, unless his other mortgages were paid. In this aspect, the case comes very nearly within the ruling in *Downer v. Miller*, 15 Wis., 612, where there was an agreement between Miller and Steever that the former was to indorse a note for the latter to raise money at the bank, to be used to procure an assignment of a foreclosure judgment to Miller, in order to indemnify him as indorser. The money was in fact used to pay and extinguish the judgment of foreclosure. This was held to be a fraud upon Miller, and he was permitted to enforce the judgment and collect the amount that he had paid.

But, independently of any agreement upon the subject, it is insisted that the plaintiff has an equitable right to have his mortgage declared a prior lien; and we think this claim must be sustained to the extent of the amount due on the $600 mortgage, and the taxes paid out of the money advanced to the executors by the plaintiff. The grounds for that relief rest upon principles of natural justice and equity, which are amply vindicated in the decisions above cited, especially in the exhaustive opinion of Mr. Justice LYON in *Blodgett v. Hitt*. The plaintiff loaned his money to the executors to pay off the $600 mortgage and taxes, which were incumbrances upon the property, and confessedly liens prior in right and superior in equity to any lien that *Martin* acquired under his mortgages of 1873–4. This $600 mortgage was given by the testator and wife to *Martin* in 1869, was past due, and *Martin* wanted his money. The plaintiff loaned his money at the solicitation of the executors, to take it up and relieve the estate. It is true,

the plaintiff took from the executors at the time the $800 mortgage in suit, relying upon the validity of the license of the probate court of Racine county authorizing and directing the executors to execute that mortgage for the purpose of procuring this loan. But it is conceded that this license is defective and does not bind the heirs; consequently the security upon which the plaintiff relied has practically failed. Still his money has been applied to the discharge of just debts against the estate, and he has the prior right to be reimbursed out of the estate to the extent of the incumbrances which he has removed.

It is objected that in furnishing the money to discharge these incumbrances he was a mere volunteer, in whose behalf there can be no subrogation. But the plaintiff loaned his money at the request of the executors, relying upon the validity of the mortgage which they had been ordered by the probate court to execute, and is not to be treated as a volunteer in the legal sense of that term. The case of *Blodgett v. Hitt* is decisive upon that point. See also *Payne v. Hathaway*, 3 Vt., 212. This case is distinguishable in its facts from *Watson v. Wilcox*, 39 Wis., 643. There the plaintiff was treated simply as a volunteer, advancing his money to pay a debt merely as an investment. Here the plaintiff advanced his money at the request of the executors, relying upon the validity of a judicial proceeding, and to discharge incumbrances upon the estate. It is not just to say that in this he was governed solely by a spirit of speculation, without regard to the advantage or interest of the heirs. Certainly it does not lie in the mouth of the heirs to say, under the circumstances, that the plaintiff was a volunteer, and is not entitled to be reimbursed out of the estate to the extent of the incumbrances removed. Nor has *Martin* any ground to complain because the plaintiff is substituted to his rights under the $600 mortgage. It is insisted by his counsel that he has some intervening right which will be prejudiced or defeated if this subroga-

tion takes place. But what intervening right has he? The $600 mortgage existed on the estate when he took the two mortgages given in 1873 and 1874; indeed, he held that mortgage. He is, therefore, in no position to say that he is injured by allowing the plaintiff a prior lien to the amount of that mortgage and the taxes actually paid out of his money.

Martin does not stand in the position that Knapp occupied in *Pelton v. Knapp*, 21 Wis., 64. There the attempt was to revive a mortgage as to previous payments made, so as to take precedence of a judgment already attached in Knapp's favor. The court held that while, perhaps, as between the immediate parties, mortgagor and mortgagees, it might be competent to revive the mortgage in favor of the party making the payments, yet this could not be done so as to displace the intervening interest of a third party. But the doctrine of that case does not seem to have any direct bearing on the one at bar, because here there is no intervening interest. If the plaintiff is subrogated to *Martin's* rights under the $600 mortgage, *Martin* has precisely the same security he had before this mortgage was paid: no more, no less. So far as the mortgages given by Mrs. Richter and husband are concerned, such priority would leave him just where he stood when they were executed. We have stated that Mrs. Eul (Richter) had joined with her husband in executing the $600 mortgage in 1869. She only had a dower interest in the surplus remaining after the payment of that mortgage. Section 5, ch. 89, Tay. Stats. We assume that Mrs. Richter mortgaged this dower interest to *Martin* by the mortgages given in 1873 and 1874. This is certainly all the estate she had in the property to mortgage at that time; and what hardship can it be to place *Martin* in the same position he occupied when the $600 mortgage was paid? He has really the same rights and the same security for the payment of those mortgages that he had then. What ground has he then to complain of the subrogation of the plaintiff to his rights under that mortgage? Such

subrogation will leave him precisely where he was when the plaintiff advanced his money to the executors. Of course, the plaintiff's prior lien must be limited to the amount which would be collectible on a foreclosure of this mortgage, and this would include taxes actually paid out of his funds, but not the expenses of administration nor any other charge which could not properly be recovered in the foreclosure of that mortgage.

The bill of costs as taxed in this case seems excessive and incorrect. It must be corrected, and all erroneous items stricken out, when judgment is again entered. It is not necessary for us to stop and point out these erroneous charges at this time.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded with directions to that court for the entry of the proper judgment according to this opinion.