RICHLAND COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

PEMBINA COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

SARGENT COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

MERCER COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

RANSOM COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

WALSH COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

DUNN COUNTY, North Dakota, a Public Corporation, Plaintiff and Respondent,

v.

The STATE of North Dakota, Walter Christensen, State Treasurer of the State of North Dakota, and Bowman County, Defendants,

and

Adams County, et al., Defendants and Appellants.

Civ. Nos. 8628–8634.

Supreme Court of North Dakota.

Sept. 4, 1970.

Rehearing Denied Nov. 10, 1970.

George T. Dynes, of Freed, Dynes & Malloy, Dickinson, Special Counsel for plaintiff and respondent in each case.

Dennis A. Schneider, Asst. State's Atty., Bismarck, Special Counsel for defendants and appellants in all cases.

STRUTZ, Judge.

In December of 1965, Stark County commenced an action against the State of North Dakota for the recovery of moneys claimed to be due it because of allegedly improper distribution of motor-vehicle registration fees by the State Treasurer. The district court permitted recovery by the County against the State, and the Supreme Court, on appeal, held that where the State, by legislative enactment, provided for the distribution of a portion of the motor-vehicle registration fees to the counties, and an error was made in the distribution of such funds with the result that some counties received too small a share and some counties received too large a share thereof, and where the State retained no part of such funds due the counties, no action would lie against the State by a county which had received less than its proper share of such fees. Stark County v. State, 160 N.W.2d 101 (N.D.1968).

Upon the dismissal of the action brought by Stark County against the State, the above-named seven counties, each contending that it had received less that its proper share of such motor-vehicle registration fees, commenced separate actions against fourteen defendant counties which they allege had received too large a share of such fees because of the error in distribution thereof. The seven cases were consolidated for trial. Seven judgments were entered against the fourteen counties, and thirteen of such defendant counties appeal from each of the seven judgments so entered.

On these appeals, the defendants raise a number of issues, including:

1. Did the trial court err in finding that the motor-vehicle registration fees had been improperly distributed by the State Treasurer?

2. If, because of misinterpretation of the law, distribution of such fees was improperly made, did the trial court err in failing to find that the plaintiffs' claims were not barred, either in whole or in part, by (a) the statute of limitations, (b) laches, (c) estoppel, (d) waiver, or (e) failure of the plaintiffs to give notice of claim?

3. Did the trial court err in allowing the plaintiffs interest on any sums due from the defendants?

4. Did the trial court err in denying the defendants' motions to dismiss the plaintiffs' complaints because the plaintiffs had failed to show where the moneys had come from and where and how they had been disbursed?

These issues will be considered in the order in which they appear above.

The first issue to be considered is whether there was an incorrect distribution of the motor-vehicle registration funds with the result that the plaintiff counties received too small a share and the defendant counties received too large a share thereof. Obviously, if the distribution was proper and correct, the plaintiffs have no claim against the defendants.

The history of the legislation out of which these actions arose is discussed in

Stark County v. State, *supra*. Briefly stated, it discloses that the Legislative Assembly, by enacting Chapter 177(1) of the Session Laws of 1935, provided that fifty per cent of the moneys in the motor-vehicle registration fund in excess of any amount required for payment of salaries and necessary expenses of the Motor Vehicle Department should be transferred by the State Treasurer "to the counties of the State of North Dakota; * * *" No direction was given to the State Treasurer as to the basis for transfer of such funds to the counties. Under that Act, distribution was made to the counties on the basis of the amount of motor-vehicle registration fees received from each county.

In 1955, the law was amended, but the provision for distribution to the counties was not changed and required that such distribution be made—

"1. * * *

"2. * * *

"3. Fifty percent to the counties of this state."

Again, this amendment was enacted without any direction as to distribution to the counties. Chapter 244(5), S.L. 1955.

In 1957, the law again was amended. This time, the Act provided that distribution was to be made under Subsection 3 as follows:

"3. Fifty percent to the counties of this state in proportion to the number of certificates of title credited to each county. Each county shall be credited with the certificates of title of all motor vehicles registered by residents of such county." Chapter 259(1), S.L. 1957.

In 1959, the law was further amended, without any significant change in the method of distribution. Chapter 289, Sec. 39–0439(3), S.L.1959.

Under the 1957 and 1959 amendments, the State Treasurer paid the fifty per cent of such fees to the various counties on the basis of the total amount of registration fees received from the residents of each county, regardless of the county in which payment was made. For example, if a resident of another county came to the State Capitol at Bismarck to apply for his motor-vehicle license, his home county was credited even though the license was issued in Burleigh County. Thus the only change in distribution made under the 1957 and 1959 amendments was that if fees were received from a resident of one county who purchased an automobile or his license in another county, the county of his residence was given credit instead of the county from which the registration fees had been received. Distribution was made on this basis, under an Attorney General's opinion given to the State Treasurer, until the year 1961, when a new administration took over the State government. The matter of distribution of the motor-vehicle registration fees to the counties then was re-examined, and distribution thereafter was made on the basis of the number of motor-vehicle registrations from each county, regardless of the amount of registration fees received from each county.

■ While it perhaps would seem more equitable and just to base the distribution to the counties on the amount of fees received from the residents of each county, rather than on the number of registrations from each county, a reading of the 1957 amendment clearly indicates that it was the intent of the Legislative Assembly to provide for distribution on the basis of the numerical registrations from the residents of each county. We find, therefore, that the legislative intent was that distribution be made to the various counties, after July 1, 1957, on the basis of numerical registrations from the residents of each county. Consequently, the distribution made to the various counties from July 1, 1957, the effective date of the 1957 amendment, until the method of distribution was changed in 1961, was erroneous.

Since distribution of the motor-vehicle registration fees was erroneously made from July 1957 until 1961, some counties, because of this mistake, received too small portions and other counties received too large portions of such motor-vehicle registration fees. It follows that those counties which received less than their just portion of such fees should have some right to recover from those which received more than their lawful share under the statute.

It is asserted, however, that the defendant counties had nothing to do with causing the moneys to be wrongfully distributed, and that they therefore should not be required to repay such sums which they received in excess of the amounts actually due under the statute.

■■■ A showing of wrongdoing or actual fraud on the part of the recipient is not necessary in order to recover moneys under the theory of unjust enrichment. Frank v. Tavares, 142 Cal.App.2d 683, 298 P.2d 887 (1956). The doctrine of unjust enrichment is based upon fairness and justice. In fairness, when one county receives a part of certain funds which another county should have received under the law, should not the county that is shortchanged be given a remedy? The law does not favor unjust enrichment, even where it is the result of an honest mistake. The counties which received more than their share under the law providing for distribution of motor-vehicle registration fees were unjustly enriched at the expense of those counties that received less than their share under the law.

The doctrine that one party shall not be unjustly enriched at the expense of another has been recognized in this State. We have held that an action for money had and received will lie whenever one party has possession of money that in equity belongs to another and which such party, in good conscience, should restore. Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371 (1953).

■■ An action for money had and received will lie whenever one party has in his possession money which in equity belongs to another and ought to be delivered to such party. An action for money had and received is in the nature of an equitable remedy to compel a party unjustly enriched at the expense of another to disgorge that which it thus has received and to deliver it to the one entitled thereto. Norris v. Cohen, 223 Minn. 471, 27 N.W.2d 277, 171 A.L.R. 178 (1947).

■ We therefore find that the plaintiff counties, which received less than their share of motor-vehicle registration fees provided for under the 1957 law, have a cause of action against the defendant counties which received more than their proper share of such motor-vehicle registration fees.

We next will consider whether, since the distribution was improper under the law and since the plaintiff counties do have a cause of action against the counties which received more than their proper share of motor-vehicle registration fees, the trial court erred in failing to find that the plaintiffs' claims were not barred, in whole or in part, by the statute of limitations—which was pleaded by the defendants—or by laches, estoppel, waiver, and failure of the plaintiffs to give notice of their claims against the defendants. We first will consider whether the statute of limitations operates to bar, in whole or in part, the plaintiffs' claims. Our six-year statute of limitations, Section 28–01–16, North Dakota Century Code, provides:

"The following actions must be commenced within six years after the cause of action has accrued:

"1. An action upon a contract, obligation, or liability, express or implied, * * *."

■ The actions of the plaintiffs are based upon an implied contract, obligation, or liability. Thus it would appear that

such actions must be commenced within six years after the claims of the plaintiffs had accrued. The plaintiffs admit that, normally, the six-year statute of limitations would apply as against their claims, since they state in their brief:

"It is agreed that normally the 6-year statute of limitations would be applicable to this type of claim and we take no issue with the statement that the statute of limitations applies both for and against counties as well as individuals."

This concession is in line with the decisions of this court. In Rosedale School District No. 5 v. Towner County, 56 N.D. 41, 216 N.W. 212 (1927), this court specifically held that counties were amenable to the statutes of limitation of this State.

■ Since the statutes of limitation do apply to claims by counties, we must determine when the claims of the plaintiff counties accrued, since the applicable statute operates from the date of accrual. The plaintiffs assert that the statute of limitations did not commence to run against their claims until notice, and that no chargeable notice was received by the plaintiff counties until three and one-half years after such wrongful distribution by the State Treasurer. If this assertion of the plaintiffs is correct, no part of the plaintiffs' claims are barred by the statute of limitations. The trial court found that the statute of limitations began to run only when the plaintiffs had knowledge of their possible claims. The defendants, on the other hand, assert that the statute began to run in each case, not upon discovery by the plaintiffs of the mistake in distribution by the State Treasurer but at the time each quarterly distribution payment was made to the various counties.

■ Subsection 6 of Section 28–01–16, North Dakota Century Code, does provide for a tolling of the six-year statute of limitations under certain situations, and provides that in an action for relief on the ground of fraud in all cases, both at law and in equity, the statute of limitations is tolled until the discovery by the aggrieved party of facts constituting the fraud. We do not believe, however, that a tolling under this portion of the statute may be urged by the plaintiffs in this case. The plaintiffs do not contend that the defendant counties practiced any fraud in this matter. In fact, there is nothing in the record to indicate that the defendants had any idea that the distribution of these motor-vehicle registration funds was made on any basis other than as provided by law.

■ Generally, where money is paid under a mistake, a cause of action to recover it arises immediately and the statute of limitations begins to run on the date of such payment. 54 C.J.S. Limitations of Actions § 159 c, at 105. If a cause of action accrues immediately where a party, under mistake, takes payment, and the statute of limitations runs from the date of such payment so mistakenly made, the same rule would apply where the State of North Dakota, by mistake, made erroneous payments, and the statute of limitations would run from the date of each payment made by the State Treasurer to the defendant counties.

■ Thus, when the plaintiffs received each payment from the State, where there was no concealment by the defendants, and where, by the exercise of reasonable diligence, the plaintiffs might have discovered the mistake of the State Treasurer as easily as the defendants could have discovered it, the statute of limitations began to run as to each payment at the time it was made by the State Treasurer.

In line with this conclusion, we would point to the decision of this court in the case of Rosedale School District No. 5 v. Towner County, *supra*. In that case, the County was sued for moneys which it had mistakenly failed to distribute to the plaintiff school district, and this court said:

"There is no contention in this action that the county treasurer or the defend-

ant county acted fraudulently or collusively or that the county received the money as the result of any fraud or collusion. The basis of the action is that the county treasurer, in the good-faith performance of his official duty, made a mistake in the distribution of moneys he had collected for interest and penalty upon school taxes. It is admitted that the county treasurer made such mistake."

This court then went on to say that everything was done openly and publicly. There was no fraudulent concealment by the county. Under these circumstances, the statute of limitations was held to be available as a defense by the county and that it commenced to run from the time of each payment.

We see no reason for applying any different rule in the cases now before us. We therefore hold that the statute of limitations began to operate against each payment by the State to the plaintiff counties on the date such payment was made.

■ As stated above, the defendants urge certain other defenses against the claims of the plaintiff counties. These include laches, estoppel, waiver, and failure to give the defendants notice of the plaintiffs' claims. We have considered each of these and find them to be without merit. The defense of laches is based principally upon the inequity of permitting a claim to be enforced due to change of conditions of the parties because of such delay. It is based upon conduct of the party against whom the defense is urged which places the other party in a situation where his rights will be imperiled and his defenses embarrassed because of such delay. It is based upon inexcusable delay in asserting a right. Dakota Trust Co. v. Headland, 57 N.D. 810, 224 N.W. 220 (1929); Sioux Falls Construction Co. v. Dakota Flooring, 109 N.W.2d 244 (N.D.1961). We find no laches in the cases before us.

■ Neither is there any merit to the defense of estoppel urged by the defendants. This court has held that estoppel arises where, by the conduct or acts of another, a party has been induced to alter his position or to do something, to his prejudice, which he otherwise would not have done. Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137 (1947); Woodside v. Lee, 81 N.W.2d 745 (N.D.1957); Grand Forks County v. City of Grand Forks, 123 N.W.2d 42 (N.D.1963); Conklin v. North American Life & Casualty Co., 88 N.W.2d 825 (N.D.1958); Knauss v. Miles Homes, Inc., 173 N.W.2d 896 (N.D.1970).

The defendants have wholly failed to show any act on the part of any of the plaintiff counties which induced the defendants to alter their position, to their prejudice.

■ The defense of waiver, urged against the plaintiffs, also is found to be without merit. A waiver is the voluntary and intentional relinquishment of a known right, benefit, claim, or privilege which, except for such waiver, the party would have enjoyed. Meyer v. National Fire Insurance Co., 67 N.D. 77, 269 N.W. 845 (1936); 92 C.J.S. Waiver, at 1044. The record wholly fails to show any facts upon which the defense of waiver could be urged by the defendants. The plaintiff counties did not waive any right in connection with their claims against the defendant counties, which right, except for such waiver, they would have enjoyed.

■ The defendants also assert that the plaintiffs failed to file a claim with the defendants making demand for such moneys before commencing their actions, and that they therefore cannot recover moneys wrongfully paid to the defendants and withheld by them from the plaintiffs. Section 21–05–01, North Dakota Century Code, provides that any person having an account, claim, or demand against any county "for any property or services for which such * * * county shall be liable" shall reduce such claim to writing and verify and present it to the county against whom the claim is filed. This provision

applies to those who do business with the county, but it does not, in our opinion, apply in a case where one county holds money which has been paid to it by mistake and the county is sued for such money so wrongfully paid to it.

 The defendants also point to Section 9–10–05(3), North Dakota Century Code, which provides that one who obtains a thing without consent of the owner shall restore it without demand to the person from whom it was obtained, except:

> "3. When a thing is obtained by mutual mistake, and in such case the party obtaining the thing is not bound to return it until he has notice of the mistake."

We fail to see how this statutory provision in any way applies to the cases before us. The moneys demanded were not obtained from the plaintiffs. We hold that a demand was not necessary prior to the commencement of the actions to recover such moneys.

Another issue raised by the defendants is that the trial court erred in denying their motions to dismiss the plaintiffs' complaints because the plaintiffs have failed to show where the moneys came from, thus failing to show that any of the moneys received by the defendants actually should have been paid to the plaintiff counties. What we heretofore have said relative to the plaintiffs' claims for motor-vehicle registration fees erroneously distributed, and our finding that the plaintiffs have a right to recover from the defendant counties, which received more than they should have been paid under the law, disposes of the defendants' contention on this point.

 Another issue presented by the defendants' appeals is whether the plaintiffs are entitled to interest on any sums which might be due them under the law as determined in this opinion. Generally, a county, as a unit of government and as an arm of the State, cannot be held liable for interest on an obligation unless there is a contractual or statutory provision for the payment of interest. 20 C.J.S. Counties § 306, at 1266. This court has held that the State cannot be held to payment of interest on a claim against it unless bound by express law or legal contract. Ford Motor Co. v. State, 65 N.D. 316, 258 N.W. 596 (1935). The county is an arm of the State. In the instant cases, the liability of the defendant counties is not based upon an express contract which provides for the payment of interest. Nor do we have statutory provisions which require payment of interest under the circumstances here presented. The payment of moneys in excess · of the amount due the defendant counties surely cannot come within Section 37–14–03, North Dakota Century Code, which provides that it will be presumed that interest is due on any loan of money. The moneys involved in these cases were not loans by the plaintiff counties to the defendant counties. They were moneys which the defendants received due to erroneous distribution by the State Treasurer, and the general rule that a county, as a unit of government and an arm of the State, is not liable for the payment of interest on an obligation unless it contracts to pay interest or there is a statutory provision for its payment, would apply. Interest on the amounts which will be found to be due the plaintiffs from the defendants under this opinion shall be due from the date of judgment at the rate of interest provided for judgments by statute.

 It would be very difficult, if not impossible, to determine from the record before us the exact amounts due in each case. Accordingly, these cases are remanded to the district court for disposition consistent with this opinion, with leave to receive additional evidence if necessary. All parties being units of government and arms of the State, no costs will be taxed on these appeals.

TEIGEN, C. J., ERICKSTAD and KNUDSON, JJ., and EMIL A. GIESE, District Judge, concur.

PAULSON, J., deeming himself disqualified did not participate; EMIL A. GIESE, District Judge of the Sixth Judicial District, sitting in his stead.